## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**ANGELA SCHUNCEY RICHARDSON**                                      **PLAINTIFF**
**ADC# 712575**

**V.**                              **NO. 4:21-cv-00134-LPR-ERE**

**KRYSTLE REED DUNCAN**                                      **DEFENDANT**

### RECOMMENDED DISPOSITON

**I.    Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

**II.    Introduction**

Angela Schuncey Richardson, an inmate at the McPherson Unit of the Arkansas Division of Correction ("ADC"), filed this *pro se*[1] lawsuit under § 1983,

---

[1] Ms. Richardson never requested counsel. The Court considered appointing an attorney to

alleging that former ADC staff member Krystle Reed Duncan ("Defendant Reed")[2]

sexually harassed and assaulted her in violation of the Eighth Amendment. *Doc. 2*.

Before the Court is Ms. Richardson's motion for a default judgment, filed

April 19, 2022.[3] *Doc. 27*. On June 30, 2022, the Court held an in-person hearing,

during which Ms. Richardson clarified her complaint allegations and provided

testimony in support of her claim for money damages.[4]

After careful consideration, and for reasons that follow, the Court

recommends that the Court:  (1) direct the Clerk to vacate entry of default against

Defendant Reed; (2) deny Ms. Richardson's motion for default judgment; and (3)

---

assist her at the hearing but concluded that none of the relevant factors supported that measure. See *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (listing factors including factual and legal complexity of issues, ability of the plaintiff to investigate facts and present claims, and existence of conflicting testimony).

[2] In her complaint and other filings, Ms. Richardson refers to Defendant Duncan as "Krystal Reed," and the Court will do the same.

[3] In an order entered April 11, 2022 (*Doc. 26*), the Court found that Defendant Reed received service of the complaint and a summons on October 21, 2021, and failed to file a timely answer or response make an appearance in the case. In the same order, the Court provided Ms. Richardson an opportunity to seek an entry of default and a default judgment, pursuant to Rule 55 of the Federal Rules of Civil Procedure.
On April 19, 2022, Ms. Richardson filed the motion for default judgment now before the Court (*Doc. 27*), and on April 25, the Clerk entered Defendant Reed's default, as directed by the Court. *Docs. 28, 29*.  In an Order entered April 29, 2022 (*Doc. 30*), the Court scheduled a default judgment hearing and advised Ms. Richardson that she would have an opportunity at the hearing to clarify her factual allegations and present evidence in support of her request for money damages.

[4] Rule 55(b)(2) of the Federal Rules of Civil Procedure permits a court to conduct a hearing "when, to enter or effectuate judgment, it needs to:  (a) conduct an accounting; (b) determine the amount of damages; (c) establish the truth of any allegation by evidence; or (d) investigate any other matter."

dismiss this action without prejudice. Alternatively, if the Court finds that Ms. Richardson is entitled to a default judgment in her favor, it is recommended that the Court award her nominal damages, such as $1.00.

## III.   **Default Judgment Standard**

Given Defendant Reed's default, Ms. Richardson's well-pleaded factual allegations, other than those relating to damages, are taken as true. *Sampson v. Lambert*, 903 F.3d 798, 805–06 (8th Cir. 2018) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true."). The Court, however, must ensure that Ms. Richardson's factual allegations provide a basis for Defendant Reed's liability. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §2688 at 63 (3d ed. 1998)) ("[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

## IV.   **Complaint Allegations**

Ms. Richardson claims that Defendant Reed, sued in both her individual and official capacities,[5] sexually harassed and assaulted her from mid-November 2018

---

[5] Ms. Richardson alleges *no* facts to support an official capacity claim against Defendant Reed. First, an official-capacity claim for money damages is barred under Eleventh Amendment sovereign immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-70 (1989); *Brown v.*

until sometime in January 2019 in violation of her Eighth Amendment right to be

free from cruel and unusual punishment.[6]

Ms. Richardson's factual allegations, assumed true by reason of Defendant

Reed's default,[7] are these. In "weak moments of her incarceration . . . due to suffering

from hate, discrimination, malice, retaliation, sexual assaults, and sexual harassment

[at] the hands of ADC prison staff officials[,]" Ms. Richardson confided and trusted

Defendant Reed and Nurse Houston (not a party) "about it all." *Doc. 2 at 3*.

Thereafter, Defendant Reed began sending messages to Ms. Richardson

through another inmate. In addition, Defendant Reed, who worked as the "posting

---

*Mo. Dep't of Corr.*, 353 F.3d 1038, 1041 (8th Cir. 2004).

    Second, although Richardson seeks prospective injunctive relief in the form of a new prison policy, this case does not fit the exception under *Ex parte Young*, 209 U.S. at 159-60 (1908). *Young* permits prospective injunctive relief against a state official to prevent a continuing violation of federal law, but the official sued must have the authority to execute actions required by the injunction. *Id.* at 157 (explaining that the state official sued must have "some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party"). Defendant Reed, a former ADC employee, does not qualify.

    [6] Ms. Richardson's complaint also refers to a "failure to protect," but the pleading fails to allege any facts to support a plausible failure to protect claim against Defendant Reed, the sole defendant.

    [7] As a defaulting party, Defendant Reed is deemed to have admitted the *existing*, well-pleaded factual allegations in the operative complaint, as opposed to any new allegations made after her default. Richardson did not seek to amend her complaint. Any requested amendment, if granted, would have required that the entry of default be vacated. See *Allied World Insurance Company v. CMM Mechanical, LLC*, No. 4:17-cv-00835-KGB, 2022 WL 831878, at *1 (E.D. Ark., Feb. 25, 2022) (citations omitted) ("However, when Allied World filed its first amended complaint on January 30, 2019, that action rendered moot Allied World's original complaint and rendered moot the Clerk's defaults entered as to that original complaint.").

security officer in medical" (*Doc. 7 at 1*), allowed Ms. Richardson to "remain in medical on her shifts nearing 9 hours." *Doc. 2 at 1*.

"Feelings" between Defendant Reed and Ms. Richardson "led into sexual misconduct such as: kissing & the plaintiff penetrating officer Reed[']s vagina." *Doc. 2 at 1*. The relationship "continued for months with e-mails . . . and [Defendant] Reed placing money on [Ms. Richardson's] books at times." *Id.*

Ms. Richardson "went along with the relationship due to her weakness and feeling safe with [Defendant] Reed." *Id. at 1-2*. Ms. Richardson told no person, other than a family member, about the relationship because in the past, when she reported incidents of "sexual assault," she received inhumane treatment, retaliation, and false disciplinaries and incident reports.[8] *Id. at 2*. "Being such a targeted inmate[, Ms. Richardson] could not break the silence." *Id.*

Ms. Richardson "soon [found] out that [Defendant] Reed was also carrying on with other inmates in the past before their release." *Id.* Ms. Richardson was "just another victim." *Id.* Her hair started falling out, and she suffered emotional distress and mental anguish. *Id.* Ms. Richardson "still suffers from anxiety from . . .

---

[8] Ms. Richardson's allegations regarding retaliation and false disciplinaries are part of a separate action: *Richardson v. Payne, et al.*, No. 4:22-cv-00160-LPR-PSH. In that case, Ms. Richardson alleges that she received a false disciplinary for accessing a computer in the infirmary. *Id., Doc. 4 at 8*. According to Richardson's allegation in that case, Defendant Reed was working in the infirmary at the time of "the alleged incident" and admitted that Richardson did not access the medical computer. *Id.*

[Defendant] Reed and other prison officials." *Id*. In addition, Ms. Richardson was "unjustly placed in segregation," the subject of another case filed by her against Warden John Herrington. *Id*.

Ms. Richardson "has found healing steps through praying[,] being that her security concerns [have been] ignored." *Id*. She "is hated at . . . McPherson by multiple staff [members]" and speaking out about unconstitutional violations has [caused her to suffer] hardships." *Id*.

Grievance papers attached to the complaint indicate that the ADC ended Defendant Reed's employment in January 2019.[9] *Id. at 8* (Director's Decision). The grievance papers also show that in January 2020, approximately one year after Defendant Reed left the ADC, Ms. Richardson filed a grievance regarding Defendant Reed's "sexual misconduct." *Id. at 7*. Ms. Richardson's grievance stated that she and Defendant Reed "engaged in sexual misconduct," that Defendant Reed "came on" to her, and that she "gave in to [Defendant] Reed by trusting her in due time [because] she knew that ADC staff targeted [her]." *Id*.

Ms. Richardson's grievance was forwarded to the McPherson Unit's Prison Rape Elimination Act (PREA) coordinator for investigation. *Id*. The Director's decision, dated April 3, 2020, stated:

---

[9] During the hearing, Ms. Richardson stated that she believed Defendant Reed was not terminated until after Valentine's Day, 2020.

> Your allegations were forwarded to Internal Affairs for Investigation. These allegations were sustained; however, the staff member in question has not been employed by ADC since January 2019. You are in no imminent danger from this ex-staff member. In January 2019 you were interviewed in Pine Bluff by Internal Affairs, regarding a different issue with the same ex-staff member. At that time, and no time until you called the PREA hotline on 12-29-2019, did you report sexual misconduct with this ex-staff member. I have recommended this investigation by forwarded to the State Police for any action deemed necessary.

*Id*.

In response to Ms. Richardson's appeal, the Warden's decision stated:

> After review of your appeal and supporting documentation, I find that on 3/9/20, this investigation was sent to Arkansas State Police for further investigation. Once the investigation has been completed, you will be notified of the result. Therefore, I will not determine the merit of your appeal at this time.

*Id. at 8*.

## V. <u>Hearing Testimony</u>

At the June 30 hearing, Ms. Richardson clarified that Defendant Reed never raped her or applied physical force against her. She explained, however, that because she told Defendant Reed about her problems, she believed that Defendant Reed "knew too much" and that she had to "go along" with the relationship or suffer reprisal. According to Ms. Richardson's assessment of the relationship, Defendant Reed didn't really care about Ms. Richardson's problems, but used them as leverage to get her to participate in an inappropriate physical relationship.

7

In addition to testimony, Ms. Richardson presented letters that Defendant Reed wrote her in March 2019, after her employment at the ADC had ended. Ms. Richardson explained that Defendant Reed wrote the letters under the pseudonym "Lexi Ford." Contrary to Ms. Richardson's portrayal of Defendant Reed as uncaring and manipulative, her letters to Ms. Richardson professed love and provided words of encouragement and sympathy. In addition, the letters reference written communications that Defendant Reed received from Ms. Richardson, indicating that the two remained on good terms after Defendant Reed left her job at the ADC.[10]

Regarding damages, Ms. Richardson testified that she experienced anxiety and depression during the alleged sexual abuse, that she lost hair, and would take her mind elsewhere just to get through it. She further testified that she struggles with depression to this day. However, Ms. Richardson also acknowledged that she suffered from depression before her relationship with Defendant Reed and had taken Buspar or buspirone for that pre-existing condition. In addition, Ms. Richardson recognized other sources of her depression, unrelated to Defendant Reed, including alleged sexual abuse by a prison nurse, the subject of a separate lawsuit,[11] and mistreatment by ADC officials.

---

[10] Notably, Ms. Richardson did not offer the multiple letters that she apparently wrote to Defendant Reed.

[11] In *Richardson v. Porchia*, No. 1-16-cv-00154-KGB/JTK (E.D. Ark), Ms. Richardson alleged that during her incarceration at ADC's Hawkins Center for Women, Defendant Courtney Porchia, a nurse, sexually abused her in the prison's medical unit. United States Magistrate Judge

Ms. Richardson testified that she has not sought out mental health treatment for emotional suffering because she feels dirty, like a prostitute, and she avoids visiting the prison's medical unit, where she spent time with Defendant Reed. Ms. Richardson stated that she no longer takes Buspar for her depression, but medication prescribed for her ankle pain, nortriptyline, has the added benefit of easing her anxiety.

## VI.   Discussion

### A.   Ms. Richardson's Factual Allegations, as Clarified, Fail to State an Eighth Amendment Claim

In *Freitas v. Ault,* 109 F.3d 1335, 1338 (8th Cir.1997), the Eighth Circuit recognized that the sexual abuse of a prisoner by a correctional officer may amount to an Eighth Amendment violation:

> [B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment.

To prevail, "an inmate must . . . prove, as an objective matter, that the alleged abuse or harassment caused "pain" and, as a subjective matter, that the officer in

---

Kearney held an evidentiary hearing and found Ms. Richardson's testimony not credible. *Id., Doc 140 at 14.* In addition, Judge Kearney credited testimony that Ms. Richardson falsely accused Defendant Porchia of sexual abuse to obtain a transfer to the McPherson Unit. *Id.* Based on his findings, Judge Kearney recommended dismissal of Ms. Richardson's claims. *Id., Doc. 140 at 16.* On March 31, 2022, United States District Judge Baker adopted Judge Kearney's findings as to the merits of Ms. Richardson's claims and dismissed the case. *Doc. 150.*

question acted with a sufficiently culpable state of mind."[12] *Id*. at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

The objective component of an Eighth Amendment claim asks "whether the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 2. The objective component "is contextual and responsive to 'contemporary standards of decency.'" *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  In the context of alleged sexual assault, the Eighth Circuit has held a consensual relationship between a correctional officer and an inmate, no matter how inappropriate, cannot satisfy the objective component of an Eighth Amendment claim. *Freitas*, 109 F.3d at 1338–39 ("Without deciding at what point unwelcome sexual advances become serious enough to constitute 'pain,' we hold that, at the very least, welcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute 'pain' as contemplated by the Eighth Amendment.").

Although the imbalance of power between Defendant Reed and Ms. Richardson is a factor to consider,[13] Ms. Richardson fails to allege facts to support

---

[12] As Judge Baker noted in *Richardson v. Porchia*, No. 1:16-cv-00154-KGB-JTK, *Freitas* sets out the standard for an inmate's Eighth Amendment claim alleging sexual harassment or abuse, and that standard is not altered or replaced by the Prison Rape Elimination Act (PREA). *Id*. at Doc. 150 at 2. Judge Baker also noted that PREA does not provide a private cause of action. *Id*.

[13] Given the imbalance of power between inmate and custodian, federal courts have questioned whether, consistent with the Eighth Amendment, an inmate can, as a legal matter, consent to a sexual relationship with a prison employee. At least one district court has held that

her stated belief that had she not "gone along" with a sexual relationship, Defendant

Reed would have used her position to harm her.

Ms. Richardson's theory of sexual abuse, based on her subjective thoughts, is

simply not corroborated by the facts alleged in her complaint. She does not allege

that Defendant Reed used her position to threaten, intimidate, or pressure her into a

sexual relationship. Accepting Ms. Richardson's factual allegations as true, she fails

to plead facts sufficient to establish the objective component of an Eighth

Amendment claim. See *Ashcroft v. Iqbal*,  556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the

line between possibility and plausibility of 'entitlement to relief.'").

Ms. Richardson's allegations also fall short under the subjective component

of an Eighth Amendment claim. This prong is satisfied when "the official knows of

---

consent is not a valid defense to a prisoner's sexual assault claim. *Carrigan v. Davis*, 70 F. Supp. 2d 448, 452–53 (D. Del. 1999) (concluding "as a matter of law, that an act of vaginal intercourse and/or fellatio between a prison inmate and a prison guard, whether consensual or not, is a per se violation of the Eighth Amendment). Some courts employ a burden-shifting framework, where sexual conduct is presumed nonconsensual, but the defendant may rebut the presumption by showing that the conduct involved "no coercive factors." *Hale v. Boyle Cnty*., 18 F.4th 845, 854 (6th Cir. 2021); *Wood v. Beauclair,* 692 F.3d 1041, 1046-48 (9th Cir. 2012).

    However, the Eighth Circuit has neither adopted a per se rule that an inmate can never consent to sexual contact with a prison employee, nor sanctioned a burden-shifting framework that presumes non-consent. Instead, the law of this Circuit holds that "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute 'pain' as contemplated by the Eighth Amendment[,]" *Freitas v. Ault*, 109 F.3d 1335, 1339 (8th Cir. 1997), and that unsubstantiated assertions that the plaintiff succumbed to  the defendant's sexual advances for fear of "possible" negative consequences will not suffice.  *Id*.

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Ms. Richardson does not allege that she communicated to Defendant Reed, by conduct or words, that she was not a willing participant in their relationship. Nor does she allege facts suggesting that Defendant Reed perceived that Ms. Richardson believed that she had no choice but to go along with their sexual encounters. Further, the letters submitted by Ms. Richardson are a further indication that Defendant Reed perceived their relationship as mutual and consensual.

In sum, while Defendant Reed's alleged conduct may warrant condemnation,[14] it does not rise to the level of inflicting cruel and unusual punishment. See *Farmer*, 511 U.S. at 838 ("But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.")

---

[14] Many states, including Arkansas and Iowa, where the Plaintiff in *Freitas* was incarcerated, have criminalized sexual contact between inmates and prison staff, regardless of consent. *See, e.g.* Ark. Code. Ann. § 5-14-127(a)(2) (defining sexual assault in the fourth degree, a class D felony, to include when a person "employed" by the ADC "engages in sexual contact" with a prisoner or detainee); I.C.A. § 709.16 (making it an "aggravated misdemeanor for a prison "officer, employee, contractor, vendor, volunteer, or agent" to "engage in a sex act" with a prisoner). However, a criminal violation does not equal a violation of the Eighth Amendment.

Because Ms. Richardson's factual allegations fail to state an Eighth Amendment claim, her motion for a default judgment should be denied, and her complaint dismissed without prejudice. See 42 U.S.C.A. § 1997e(c) ("The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under section 1983 . . . by a prisoner . . . if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted . . ..."); see also 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring that the court "dismiss the case at any time" it determines that an *in forma pauperis* complaint fails to state a claim on which relief may be granted).

### B.     Damages

Even if Ms. Richardson's factual allegations establish liability, she must still prove damages by a preponderance of the evidence. See *Everyday Learning Corp. v. Larson,* 242 F.3d 815, 818–19 (8th Cir.2001) (affirming denial of damage award after default where "speculative and not proven by a fair preponderance of the evidence."). Ms. Richardson seeks $350,000 in compensatory damages, based solely on mental and emotional suffering, and $150,000 in punitive damages.[15] *Doc. 2 at 6.*

---

[15] Ms. Richardson also seeks "a policy to make inmates feel comfortable [about] breaking the silence instead of retaliatory actions and false disciplinaries[,]" *Doc. 2. at 6*, but for reasons the Court has explained, see *supra, footnote 5,* her allegations do not support such injunctive relief.

Compensatory damages, available under § 1983 may include damages for personal humiliation, and mental and emotional suffering the plaintiff has experienced and is reasonably certain to experience in the future. *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 798 (8th Cir. 1998). However, given Ms. Richardson's admission that her depression preexisted her relationship with Defendant Reed and that additional factors contributed to her ongoing anxiety and mental suffering, she has failed to show a causal relationship between her emotional suffering and Defendant Reed's alleged unconstitutional conduct. Accordingly, if the Court finds that Ms. Richardson's factual allegations are sufficient to establish liability, it is recommended that the Court award nominal damages, such as $1.00. *Thurairajah v. City of Fort Smith, Arkansas*, 3 F.4th 1017, 1026 (8th Cir. 2021) (citations omitted) (explaining that an award of compensatory damages is mandatory upon a finding of liability under § 1983, but where constitutional violations are not the proximate cause of damages, nominal damages are proper).

Punitive damages may be awarded under § 1983 only with proof of sufficiently serious misconduct. *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997). "Punitive damages are awarded to 'punish the defendant for his [or her] willful or malicious conduct and to deter others from similar behavior.'" *Id*. (quoting *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 306 n. 9 (1986)).

As the Eighth Circuit has explained:

The focus, in determining the propriety of punitive damages, is on the intent of the defendant and whether the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards. Punitive damages are appropriate in a § 1983 case when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

*Coleman*, 114 F.3d at 787 (internal quotations and citations omitted). Here, Ms. Richardson presents no evidence demonstrating that Defendant Reed's conduct warrants an award of punitive damages.

## VII.  Conclusion

IT IS THEREFORE RECOMMENDED that:

(1)    The entry of default against Defendant Krystle Reed Duncan (*Doc. 29*) be VACATED.

(2)    Ms. Richardson's motion for a default judgment (*Doc. 27*) be DENIED.

(3)    Ms. Richardson's complaint (*Doc. 2*) be DISMISSED WITHOUT PREJUDICE and the Clerk be instructed to close the case.

(4)    If the Court finds that a default judgment should be granted, it should award nominal damages, such as $1.00.

Dated this 20th day of July, 2022.

_____
UNITED STATES MAGISTRATE JUDGE